## KINSEY v. DUTTON.

### No. 13470.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 11, 1936.

Rehearing Denied Jan. 15, 1937.

Claude Spratling, of Fort Worth, and Jennings Brown, of Decatur, for appellant.

John L. Poulter, of Fort Worth, for appellee.

BROWN, Justice.

Mrs. G. W. Kinsey, a widow, brought suit in the district court of Wise county against G. A. Dutton and wife, A. E. Dutton, alleging that on March 16, 1915, the Duttons executed a warranty deed to one J. E. Hampton, whereby they conveyed to Hampton a certain tract of land of about 56 acres, in Wise county, a part of the consideration therefor being a promissory note in the sum of $500, made payable to the order of said Duttons, on January 1, 1920, bearing interest at the rate of 10 per cent., and providing for the usual 10 per cent. attorneys' fee, which note is secured by a vendor's lien retained in the land so conveyed; that on June 5, 1915, the Duttons repurchased the said land from their vendee, J. E. Hampton, and assumed the payment of such promissory note; that on April 3, 1915, such note was, for a valuable consideration, transferred to appellant, and plaintiff below, Mrs. G. W. Kinsey.

She further alleged that the note had been extended from time to time; that same had matured and she prayed for judgment on such note with her interest and attorneys' fee, and foreclosure of the vendor's lien.

Mrs. A. E. Dutton, wife of G. A. Dutton, alone answered. She denied that Hampton ever executed or delivered to her any such promissory note as is sued upon, or that she ever transferred any such note to Mrs. Kinsey, or that she ever transferred any vendor's lien on the property in controversy to Mrs. Kinsey, or that she ever delivered any such deed as mentioned in plaintiff's petition to J. E. Hampton, or that she ever agreed or consented for same to be delivered to Hampton, or that she ever repurchased the said real estate from Hampton. And she alleged that she is the owner in her own right of the lands in controversy, and denied that the plaintiff below is entitled to assert any right or lien against the same, and alleged that any pretended lien sued upon is void, in that the lands were purchased by her father and mother, J. K. and Mary Mathews, and that after the death of her father and mother a partition decree was rendered on or about May 26, 1914, in the district court of Wise county, under and by virtue of which the 56 acres of land in controversy were awarded to her, and that immediately after the judgment was rendered she entered into actual, open, and visible possession of such tract of land, and has continuously since such time so used and occupied it; and alleged that appellant has had both actual and constructive notice that the land was her separate property.

She alleged that she was in no manner a party to the transaction relied upon by the appellant, and that she has never in any manner ratified or confirmed the same, and that all such should be canceled and held for naught.

She alleged that she and her husband executed the said deed to Hampton in consideration of $1,460, to be paid by Hampton to her, and the execution and delivery by Hampton to her of the promissory note in controversy, and that no part of the $1,460 was ever paid, and Hampton has never executed and delivered to her the note provided for in the deed; that the attempted sale was never carried out; that the deed was never delivered to Hampton, but was retained by her and kept in her possession, and that she never authorized Hampton to execute and deliver to G. A. Dutton any note payable to him pretending to be a vendor's lien against her property; and that she never authorized G. A. Dutton to transfer the note to Mrs. Kinsey; that she never assented to or intended to deliver the deed to Hampton without the payment of the money specified therein and the delivery to her of the note provided for therein; and that, if Mrs. Kinsey acquired any such note, the same was acquired without her knowledge or consent.

She alleged that, if the deed to Hampton was ever filed for record, same was taken clandestinely from her possession and was "recorded long after such transfer without her knowledge or consent."

She alleged that, if Hampton and his wife attempted to convey the lands to G. A. Dutton, such attempted conveyance was made when they had no title to the lands, and was made without her knowledge or consent, and such pretended conveyance is void.

She further alleged that, if Mrs. Kinsey had any cause of action against her, the same was barred by the four-year statute of limitation, in that the extension agreements pretending to defer the time of payment of the note were not executed by her and were made without her knowledge and consent, and that same are wholly void.

She prayed that plaintiff below and appellant here take nothing as against her, and that the clouds cast upon the title of her lands be removed.

In reply to this pleading, Mrs. Kinsey alleged that J. E. Hampton was Mrs. Dutton's brother-in-law, and that all parties conspired in the execution of the warranty deed to Hampton, for the purpose of bringing into existence the $500 note, and that, after such note was sold by the Duttons and the money procured thereon, the Hamptons would reconvey the property to G. A. Dutton, who was to assume the payment of the $500 note; that all this was for the purpose of giving an outward appearance of validity to the notes and the lien securing the same; that in carrying out such plan for the purpose of raising the sum of $500 Mrs. Dutton authorized her husband and J. E. Hampton to consummate the deal.

Mrs. Kinsey alleged that she was an innocent purchaser for value before maturity and without notice of any of the matters relied upon by Mrs. Dutton; and that both Mr. and Mrs. Dutton, at the time she purchased the note, had ample opportunity to inform her of the matters now relied upon by Mrs. A. E. Dutton, and failed and refused to so do, and that the Duttons are estopped from raising the defense against her rights.

Mrs. A. E. Dutton answered this pleading by a general demurrer and a general denial.

The case was tried to a jury. After all evidence and testimony had been received, the plaintiff below and appellant here moved for an instructed verdict in her behalf, which motion was overruled.

Judgment was rendered by the trial court in favor of Mrs. A. E. Dutton, and the following language was used: "And a jury being duly empaneled and sworn, and after the reading of the pleading, and all the evidence had been adduced, the court concluded that the evidence offered by all parties was not in conflict upon any material question, and that there was no issue to be submitted to the jury, and thereupon the court discharged the jury, and rendered judgment, as follows."

This judgment awarded Mrs. Kinsey a personal recovery against defendant G. A. Dutton for $1,339.80, being the amount of principal, interest, and attorneys' fees due at the date of such judgment, December 11, 1935, but that Mrs. G. W. Kinsey take nothing as against Mrs. A. E. Dutton, and that Mrs. A. E. Dutton have and recover on her cross-action over against Mrs. Kinsey and G. A. Dutton title to and possession of the tract of land in controversy, and "that all clouds, claims or liens asserted to or against said lands by reason of the matters involved in this suit be in all things cancelled and removed, and that the said defendant, Mrs. A. E. Dutton, be quieted in her title to said lands hereinabove described."

Due exception to such judgment and notice of appeal was taken by Mrs. G. W. Kinsey, appellant here.

We are of opinion that the judgment of the trial court should be reversed and this cause remanded for a trial upon the merits, and give the following reasons for the conclusion reached:

█ In order to show her title and right to recover the property involved as against the claims and liens asserted by the appellant, over the objection of appellant, Mrs. Dutton was permitted to introduce in evidence the partition judgment and decree awarding this tract of land to her as one of the heirs of her deceased father and mother. The partition decree has never been recorded in the office of the county clerk of Wise county, in which the lands lie.

Article 6638, Rev.Civ.Statutes, provides specially that such decree "shall be duly recorded in the office of the county clerk in which such land may lie; and until so recorded, such partition, judgment or decree shall not be received in evidence in support of any right claimed by virtue thereof."

The trial court erred in permitting this decree, under the undisputed facts, to be offered in evidence, as against Mrs. Kinsey, who claims as an innocent purchaser. Ball v. Norton (Tex.Com.App.) 238 S.W. 889; Benn v. Security Realty & Development Co. (Tex.Civ.App.) 54 S.W.(2d) 146 (writ refused).

█ We find no peremptory instruction given by the court to the jury upon which his judgment is predicated. It will be noted

that the judgment simply recites that the court concluded there was no conflict in the evidence on any material question, and that there was no issue to be submitted to the jury, and that the court discharged the jury and rendered judgment. The judgment so recites and we quoted it above. We find no precedent for such action and do not believe that there is any such. If the trial court was of the opinion that this action should be taken by him, he should have peremptorily charged the jury to return the verdict which the trial court believed was proper, under the circumstances. Not having done so, we hold that the trial court erred in discharging the jury and rendering judgment without peremptorily instructing them as to the verdict which should be returned. If it should be held that the formality of a peremptory instruction was not necessary, under the circumstances, and that rendition of the judgment by the court, under the circumstances shown in this case, was tantamount to the giving of a peremptory instruction to the jury, nevertheless the trial court has erred in rendering the judgment as entered.

It is noticeable that the husband, G. A. Dutton, neither filed an answer in this suit nor testified.

Mrs. A. E. Dutton admits the execution of the deed jointly with her husband to J. E. Hampton, who was her brother-in-law; she testified that she went down to Springtown, Tex., with her husband and signed the deed before a notary public; that her husband said they were going to sell out; she said that she and her husband carried the deed back home with them, and that, if it was ever turned over to Hampton, she did not know it; that she never saw the note provided for in the deed; and that she never authorized anybody to take the note and sell it to Mrs. Kinsey; that she never signed any kind of extension agreement and never authorized anybody to sign her name on one; and never authorized her husband to extend any lien on the land.

But on cross-examination she testified that, although the deed recites Hampton paid $1,460 cash, "she didn't receive it." And, when asked if she did not know that Hampton had no money when the deed was made, she answered: "I didn't know what he had; I didn't question him." When further asked what reason she had to believe that Hampton had $1,460 in money, she answered: "Well, people make arrangements for those things, sometimes." When asked whether or not she questioned her husband about whether he had received the cash consideration for the deed, she answered: "No, that was their business." She further testified that Hampton was her brother-in-law; that they visited; and that she was "pretty close to" him.

It appears that Mr. and Mrs. Dutton and Mrs. Kinsey went to Decatur in an automobile after the time the note was sold to Mrs. Kinsey. When asked on cross-examination if she knew why her husband was going to Decatur, Mrs. Dutton answered: "I don't remember."

The following questions were propounded to and answered by her:

"Q. Do you know why Mrs. Kinsey was brought along in the car? A. Well, they had business; something concerning the outfit some way.

"Q. What outfit do you have reference to? A. It was the note, I reckon.

"Q. You knew then the note was outstanding? A. Yes, I found out by then it was.

"Q. Did you then tell Mrs. Kinsey you was contesting this note? A. No, she never asked me anything about it, and I didn't tell her anything about it.

"Q. You knew your husband was coming up here to extend this lien on this property? A. Yes.

"Q. You came up here with the lady in the car—up to Prices? A. Yes.

"Q. And you knew their mission up here and never told the lady anything about your contention? A. She didn't ask me anything about it.

"Q. You didn't tell her, did you? A. That wasn't my business to tell her.

"Q. Did you know whether she had spent her $500.00 for this—did you know that? A. I reckon I knew something about it.

"Q. Did you know your husband got $500.00 from this lady on this note? A. I don't reckon he denies getting it.

"Q. Now, Mrs. Dutton, did you at or about April 3, 1915, know your husband got $500.00? A. I learned he did.

"Q. How long after did you learn he did? A. I don't know how long it was.

"Q. What did he do with this money? A. I couldn't tell you; I never did see it."

She further testified that she never asked her husband for any part of the $500 procured from Mrs. Kinsey, and that after she learned her husband had received this sum

of money she did not go to Mrs. Kinsey and tell her the facts about the transaction.

The deed from the Duttons to Hampton, dated March 16, 1915, was filed for record on April 5, 1915. The written transfer of the vendor's lien note to Mrs. Kinsey is dated April 3, 1915, and was filed for record April 5, 1915.

■ It is plain to be seen that the evidence and testimony introduced in this case raised the issue of a design and scheme upon the part of Mrs. Dutton and her husband and brother-in-law to enter into the transaction as it was finally consummated for the purpose of making it appear that the sale to Hampton was a bona fide transaction, and that the vendor's lien note was secured by a bona fide vendor's lien, for the purpose of selling the same to an innocent third party to secure the sum of $500. Therefore the issue of estoppel was forcefully raised by the evidence and testimony. Mrs. Dutton admitted that she knew of the existence of the note and of the purpose to sell the same to Mrs. Kinsey, and of the sale and of the procurement of the purchase price from Mrs. Kinsey, and that with all these facts in her possession she made no effort to disclose to Mrs. Kinsey any of the facts which she now relies upon to establish the defense that the lien supporting the note is unenforceable.

Mrs. Kinsey testified, without contradiction, that Hampton came to see her and showed her the deed from the Duttons to him and asked her to purchase the vendor's lien note, advising her of its desirability as an investment; and that Dutton came to her with the note and asked her to buy it; that Dutton put the revenue stamps on the deed and delivered it to her, and she sent the deed and the assignment of the note and lien to the county clerk of Wise county for record.

It is undisputed that Mrs. Dutton knew that the debt and lien were extended, and that she kept concealed the defense she now relies upon.

Dutton made no effort to deny his part in the transaction, or any testimony given by Mrs. Kinsey, and Mrs. Dutton made no direct allegation of fraud on the part of her husband, in doing the things by which she profited and of which she now complains.

■ All this evidence and these omissions assuredly raised the issues of Dutton's agency for his wife, in respect to the transactions; Mrs. Dutton's knowledge of the trans-

actions; her acquiescence therein, and in the scheme, or conspiracy, entered into to color the transaction with the rainbow hues of honesty and to lead the purchaser of the note to rely upon its bona fides.

The case before us is almost squarely "on all fours" with Guaranty Bond State Bank v. Kelley, 13 S.W.(2d) 69, Texas Commission of Appeals, expressly approved, in a memorandum opinion, by the Supreme Court.

In view of the holdings in such case, we are almost persuaded that the instant suit should be rendered, but, feeling that the ends of justice may be best subserved by a remand, for the errors shown, the judgment of the trial court is reversed and the cause is remanded.