**CLINE v. INSURANCE EXCHANGE OF HOUSTON.**

No. 11057.

Court of Civil Appeals of Texas. Galveston.

July 24, 1941.

Rehearing Denied Oct. 2, 1941.

492

Elledge & Elledge, of Houston, for appellant.

Wood, Morrow, Gresham & McCorquodale and M. S. McCorquodale, all of Houston, for appellee.

CODY, Justice.

This suit was brought by appellant, who conducts a real estate mortgage business in the City of Houston and as a side line conducts an insurance business, against appellee, a trade association whose membership consists of full time local insurance agents engaged in placing insurance policies in Houston. As originally brought, appellant's suit was also against certain individual members of appellee, but all other defendants than appellee were voluntarily dismissed by appellant upon his failure to make out a case against them. Appellant's petition charged that appellee and certain members of appellee, by a combination in violation of the anti-trust laws of the State, and in restraint of trade injured plaintiff (appellant) by preventing him from getting contracts of agency to represent various insurance companies which paid excess rates to their agents. Appellant (who will hereafter be designated plaintiff) alleged that about January 1, 1936, he planned to open his business of lending money on the security of real estate, and to operate in connection therewith an insurance agency; that certain of the members of appellee (who will hereafter be referred to as defendant), because they knew that plaintiff would have the opportunity to solicit from borrowers the insurance required in connection with their loans, opposed plaintiff's obtaining of contracts of agency from insurance companies who paid excess rates to their agents; that defendant was used as the instrument to hinder plaintiff, in restraint of trade and in violation of the State's anti-trust laws—that this was done by causing defendant to adopt a rule which, when enforced, compelled all insurance companies and their general agents not to appoint plaintiff as a local or recording agent lest they thereby offend all their other local agents by making them ineligible for membership in defendant association. Said rule is designated the In-and-Out Rule. (The rule will be hereafter explained in detail.) Plaintiff further alleged the damages he had suffered, and alleged that these damages would continue unless defendant was enjoined from maintaining said In-and-Out Rule, and plaintiff prayed for damages for a permanent injunction against the maintenance and enforcement of said rule.

Defendant answered by a general demurrer, special exceptions, a general denial, and specially answered that plaintiff was not entitled to equitable relief because he is violating Vernon's Ann.Civ.St. Art. 5062a, Sec. 5, which, among other things, provides: " * * *, but it is the intent of this Section to preserve to each citizen the right to choose his own Agent or Insurance Carrier, and to prohibit the licensing of an individual or firm to engage in the insurance business principally to handle business which he controls only through ownership, mortgage, or sale. The

term 'principally' as herein used, shall mean *seventy-five per cent.*" That appellant obtains the great proportion of the insurance which he writes from borrowers who mortgage their property in borrowing from plaintiff's money lending business by coercing such borrowers and taking advantage of their necessity to borrow money.

As indicated above, plaintiff dismissed all defendants other than the one here as appellee before concluding his evidence. At the conclusion of plaintiff's evidence, defendant moved for an instructed verdict and judgment and the court thereupon granted judgment that plaintiff take nothing, and denied him the injunction which he sought.

 Defendant contends that plaintiff has assigned no error for which he seeks reversal of any ruling made or action taken by the court. It made this by motion, and urges it again in its brief. By this contention defendant seeks to make the point that plaintiff is here complaining that the court *instructed* a *verdict* against him, whereas the record discloses that what actually happened is that the court dismissed the jury and rendered judgment for defendant. The point is without merit. In legal contemplation there is no difference between the action of the court in peremptorily instructing a verdict and then rendering judgment on such verdict, and the action of the court in dismissing the jury and rendering judgment. See Thornton v. Daniel, Tex.Civ. App., 199 S.W. 831; Houston v. Holmes, Tex.Civ.App., 262 S.W. 849; Kinsey v. Dutton, Tex.Civ.App., 100 S.W.2d 1025. In order to instruct a verdict, or to dismiss a jury and render judgment, the court must find as a matter of law that there is insufficient evidence under the pleadings to raise an issue to go to the jury. Defendant's aforesaid motion, which was ordered taken with the case, is overruled.

As indicated, defendant is a trade association whose membership is limited to full time local, or, more fully designated, local recording agents, representing stock insurance companies, the agent who sells policies and collects premiums. In the insurance business the word "plant" is used both as a verb and as a noun; a "plant" in the parlance of the trade means that the insurance company is represented in the office of the local agent where the

"plant" is made. An insurance company has "planted" in the local agency when it places its supplies in the office of the local agent and authorizes him to countersign its policies, and is "planted" there so long as it maintains supplies in the local agent's office, and the local agent continues authorized to countersign and issue its policies.

The rule of defendant—the "In-and-Out" Rule—complained of by plaintiff is part of Section 2 of Art. V of defendant's constitution, and reads as follows:

"Section 2. Those who are ineligible to membership:

"(a) Those who are the agents of any fire, casualty or surety insurance company, including 'Underwriters' of same, who, or whose General Agent or Manager, has an agent within the membership jurisdiction of this Exchange, appointed after April 1, 1936, who is not a member of this Exchange.

"(b) Those who are the agents of any fire, casualty or surety insurance company, including 'Underwriters' of same, which is a member of a group or fleet of companies under the management or control of another company or manager, who, or whose General Agent or Manager, has an agent or agents, within the membership jurisdiction of this Exchange, appointed after April 1, 1936, who is not a member of this Exchange."

"(f) Those who accept from or place fire, casualty, surety or allied lines of insurance business with agents within the membership jurisdiction, who are not members of this Exchange.

"(g) Any agency owned wholly or in part, controlled by or affiliated with, a mortgage, loan, bank, or trust company ✓ or other finance concern or real estate building or sales concern. This paragraph shall not apply to those who were members of this Exchange prior to April 1, 1936."

By force of paragraph "g" above, plaintiff is ineligible for membership in the Exchange. There are about 200 insurance agents in the City of Houston. Of these approximately 50 or 60 were members when the In-and-Out Rule was passed, and at the time the case was tried there were 142 members, and approximately 60 non-members. Among the non-member agencies were agencies of substantial size writing all forms of insurance.

There was ample evidence from which it could be inferred that the In-and-Out Rule prevented some of the insurance companies which pay excess rates to agents from planting with plaintiff. If such a company planted with plaintiff, a non-member, the In-and-Out Rule would force all members with which it had plants either to cease being members or to give up the representation of such company. It is not suggested on appeal that, under such a case, the members would give up their membership. For purposes of this appeal, because the court in effect sustained a demurrer to the evidence, we must assume that a member would give up representation of a company which planted with a non-member, rather than give up his membership in the Exchange.

And this would result, of course, in such a company losing the business written by members of the Exchange. It is plaintiff's contention on this appeal that:

"1. The members of the Insurance Exchange by adopting and complying with sections (a), (b) and (f) of the In-and-Out Rule violated section 1 of article 7426, because such adoption and compliance created a combination to create restrictions in the business of insurance, and damaged appellant. The only issues to go to the jury are the existence and amount of actual damages and the existence of continuing damage.

"2. The members of the Insurance Exchange by adopting and complying with sections (a), (b) and (f) of the In-and-Out Rule violated sections 3 and 5 of Article 7426, because such adoption and compliance created a combination to lessen and prevent competition in the insurance business, and damaged appellant. The only issues to go to the jury are the existence and amount of actual damages and the existence of continuing damage.

"3. The members of the Insurance Exchange by adopting and complying with section (g) of the In-and-Out Rule violated sections 1, 3 and 5 of Article 7426, because such adoption and compliance created a combination to create restrictions in the various businesses listed in said section (g), and to lessen competition in those businesses.

"4. The members of the Insurance Exchange by adopting and complying with sections (a), (b) and (f) of the In-and-Out Rule entered into a combination to injure all nonmembers of the Insurance Exchange, including appellant, and damaged appellant. (It is here contended that this was a combination to injure which is actionable at common-law. It is not argued as a restraint of trade at common law.) The combination and intent to injure all nonmembers of the Exchange are apparent from a reading of the rule, and its adoption and enforcement are admitted, and no legal justification (immediate competitive benefit) was alleged or proved. The only issues to go to the jury are the existence of immediate competitive benefit, existence and amount of actual damage and the existence of continuing damage.

"5. The members of the Insurance Exchange by adopting and complying with sections (a), (b) and (f) of the In-and-Out Rule entered into a combination to injure appellant (a combination to injure, actionable at common law) and damaged appellant. The only issues to go to the jury are existence of such intent to injure appellant, existence of immediate competitive benefit, existence and amount of actual damage and existence of continuing damage."

It is defendant's contention that, as it was a trade association, it had the right to make such rules as would promote the legitimate ends of its members, and that if the business of the competitors of said members was in some way adversely affected it is damnum absque injuria.

Since the membership increased to nearly threefold after the adoption of the rule, it is obvious that in the opinion of the majority of the local agents in Houston, the rule does have the effect of promoting the interests of the members of said trade association. The evils at which the In-and-Out Rule are aimed are stated by defendant to be these:

(1) It is aimed against the practice of money lending institutions carrying on the insurance business as a side line, because it enables such money lending institutions to "coerce" premiums; that a borrower will, in order to placate the lender and keep his good will against any future defaults, insure with such lender even against his will; and that coercion is made illegal and against the policy of the insurance laws of Texas, Vernon's Ann.Civ.St. Art. 5062a, Sec. 5.

(2) That a lender can make the terms of a loan more favorable as an inducement to get the insurance business of the borrower, and that this amounts to rebating which is illegal. R.S. Art. 5053.

(3) That a mortgage concern, operating an insurance business as a sideline, obtains possession of insurance policies which are in force, and thus obtain information as to expiration dates, and uses this information to raid the business of his competitors.

(4) That the operator of a mortgage and loan company and an insurance agency together tends to increase the evil of over-insurance.

Defendant states other ends which it claims would be promoted by the enforcement of its In-and-Out Rule, but what has been given will serve to illustrate the character of its claims.

 It is defendant's contention also that there was no evidence before the court establishnig that plaintiff had suffered any damages in the past, or would likely suffer any damages in the future. However, it is clear that it was defendant's purpose in adopting the In-and-Out Rule to discourage the operation of an insurance business which was conducted as a sideline to a money lending business. The evidence showed that, prior to the trial, plaintiff had secured the representation of one of the insurance companies which paid excess rates to agents, and we are unable to hold that there was sufficient evidence to go to the jury that, from and after the date said insurance company which paid excess rates to agents (which was prior to the trial) planted with plaintiff, plaintiff has suffered any pecuniary losses or will in the future likely suffer same. It would only be on the ground that plaintiff would probably suffer damages in the future for which the law offers no adequate remedy that equity would enjoin the enforcement of the complained-of rule.

 The fact, however, that a course of action by a defendant may inflict a loss of profits upon a plaintiff does not, of itself, determine that the defendant has no right to adopt such course of action. The question is, in such case, did the defendant have the legal right to do the act complained of by the plaintiff as being injurious? If the defendant, in such case, had the right, then the damages suffered

by a plaintiff are damnum absque injuria, unless the defendant acted wantonly and maliciously. In this case it is the common law right of plaintiff to be free of malicious and wanton interference, disturbance and annoyance in conducting his business, but he had no right to be free from injuries which may flow from the service and promotion of any legitimate purpose and aims of the other local agents in Houston. Delz v. Winfree, 80 Tex. 400, 404, 405, 16 S.W. 111, 26 Am.St.Rep. 755. The members of the Insurance Exchange of Houston have the right to combine to serve and promote their legitimate purpose and aims. "Every business organization, society or association restricts, in more or less degree, the rights of its members. If these bodies were not allowed to do this, there would be small use for organization. No beneficial results could follow from union if * * * these bodies were not permitted to enforce, by appropriate fines and penalties, the reasonable regulations they have adopted. * * * Each of these organizations has rules that restrict the individual, and require him to do things that he may not desire to do * * * and especially in industrial bodies and labor unions, those rules operate as a partial restraint of trade in the sense that, among other things, they prescribe the number of hours a man may work, the persons for whom he may work, the wages or compensation that shall be received; but it is generally held that so long as these regulations are reasonable when applied to the individual, and do not injuriously affect the public, they will be upheld." Booker & Kinnaird v. Louisville Board of Fire Underwriters, 188 Ky. 771, 224 S.W. 451, 454, 21 A.L.R. 531. From the quoted citation, it appears that the primary test for determining the legality of a rule imposed by a trade organization upon its members is whether or not a member, who has agreed to it, or who has by his consent conferred upon the majority the power to adopt rules binding upon himself, would have the right to have its enforcement enjoined. If the rule of a trade organization or association constitutes a lawful restriction upon the activities of its members, the fact that such rule might injuriously affect the interest of a non-member (so long as there was no wanton injury inflicted upon the non-member) does not render the rule an unlawful restriction. Delz v. Winfree, supra. And since a member has, by joining

a trade association, agreed to all lawful rules and regulations which such association may impose on its members, before he would be entitled to have a rule declared void, and its enforcement enjoined, he would have the burden of showing such rule to be illegal—that is, the burden of showing such rule unreasonable as a matter of law. And, though a non-member has not consented to the adoption of a rule of a trade association which affects him injuriously, he will also have to show that such rule is illegal before he will be entitled to have it declared void, and its operation enjoined. And in order to show that it is illegal, he must either show that it violates positive law, or that it is so exceedingly unreasonable as a matter of law as to be illegal and void. There is no contention made by plaintiff that he showed as a matter of law the law was an unreasonable restriction on the activities of a member. The court therefore did not err in withdrawing the case from the jury, for there was no question to go to the jury as to the reasonableness of the rule.

As further bearing upon the right of defendant to adopt the In-and-Out Rule, which in operation resulted in the members of defendant refusing to be associated with insurance companies, as the agents of such companies, which planted with agents who wrote insurance as a side line to a money lending business, we cite Harris v. Thomas, Tex.Civ.App., 217 S.W. 1068, 1077, which involved the Potter County Medical Association. The Potter County Medical Association adopted a rule forbidding the doctors who belonged to the association to perform operations or treat patients in conjunction with doctors who were not members of the association; and adopted rules to "standardize" practice in hospitals. And the members of the association were not permitted by their rules to operate or assist in an operation in hospitals where osteopaths were permitted to practice. This resulted in the plaintiff, who was an osteopath, being barred from the hospital. He sued the association and hospital, and sought an injunction to stop what he designated to be a boycott and a violation of the anti-trust laws. The court held: "We think such a society as the Potter County Medical Association is legitimate and lawful. If it is an organization which is largely composed by the appellee doctors, and if it does directly or indirectly affect the material interest of appellant or in some degree affect him as a nonmember, this would not justify the courts in denouncing it as an illegal or unlawful conspiracy. The association has the right to advance its purpose or interest and that of its members by all legitimate means. If it deemed appellant an osteopath, and that as such he was supporting an exclusive system, the association and its members were within their rights, under its rules, in rejecting him as a member. They also had the right to refuse to assist him in operations. They could, if they deemed it to the interest of medicine or surgery or the welfare of humanity, agree among themselves not to assist appellant in surgery if they did so in good faith and with no intent to injure appellant."

It was upon the same principle that the case of Sheehan v. Levy, Tex.Com.App., 238 S.W. 900, 902, was decided. And it was there held: "there is absolutely no evidence in this record showing any malice or ill will on the part of the Local Union toward Sheehan. On the contrary, it is full of testimony showing that their relations were at all times of the most friendly character. In the first place, the rule of the Local Union requiring its members to work only for contractors who were members of the Master Plumbers' Association was entirely impersonal. It was not directed toward Sheehan alone. It was a general rule." The court commented upon the fact that Sheehan could have qualified for membership in the Association and could have joined it.

We are not able in principle to distinguish the foregoing cases from the instant case. It is plaintiff's contention that, "A great deal of confusion has been introduced into the consideration of questions involving associations of merchants and other business men by the confusion of principles governing men in these occupations with the principles governing trade unions." We are unable to see any fundamental difference between the situation of local insurance agents and that of other men who labor with their heads and hands, which prevent a trade association of local insurance agents from being governed by the same principles which govern trade unions. Labor organizations are defined in R.S. Article 5152 as follows: "Article 5152. Right to organize. It shall be lawful for any and all persons engaged in any kind of work or labor, manual or

mental, or both, to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service in their respective pursuits and employments."

And R.S. Article 5153 reads: "Article 5153. Other rights and privileges. It shall be lawful for any member or members of such trades union or other organization or association, or any other person, to induce or attempt to induce by peaceable and lawful means, any person to accept any particular employment or to enter or refuse to enter any pursuit or quit or relinquish any particular employment or pursuit in which such person may then be engaged. Such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner."

There is nothing in the quoted statutes which would prevent local insurance agents from qualifying under the statutes to form a trade association; and we are unable to see anything in the statute which places a trade association composed of members whose work consist of personal service, mental or manual, in a different category from that of a trade union.

We think that the case of Harris v. Thomas, supra (involving the Potter County Medical Association), states the settled rule of decision in Texas by which physicians can make rules as was done in the cited case. The United States v. American Medical Association et al., 72 App.D.C. 12, 110 F.2d 703, reversed the holding of the trial court to the effect that the practice of medicine did not constitute trade within the intent of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. There is nothing in the holding in that case which has the effect of overturning the settled rule of decision represented by the case of Harris v. Thomas, supra, for the Sherman Anti-Trust Act is not here involved.

The record is replete with evidence that plaintiff is a man of high integrity, and that, except for his joining the money lending business with that of a local insurance agent, he would be welcomed as a member of defendant association. But plaintiff is not seeking to become a member, which he could do by qualifying for membership. He is seeking to have, by court action, the in-and-out rule cancelled. This, under the quoted authorities, he would not be entitled to even if he were a member. We are unable to see how plaintiff, a non-member, would have any greater right to have the rule cancelled than would a member.

In his main brief plaintiff cites some 28 authorities, and lists 68 authorities in his reply brief. We cannot review these authorities; and if we are right in the views here expressed, they are not in point, with the possible exception of one case, and no useful purpose would be served by so doing. If the enforcement of the rule constitutes a violation of the anti-trust laws of the State, then, of course, the result is a violation of the anti-trust laws of the state, and is illegal. Under the authority of the Harris and Sheehan cases, supra, we think that the enforcement of the rule does not constitute such a violation; and we must indeed conclude that the rule was drafted to come within the rule in these cases. To be sure, wherever cases preventing conflicting interests arise, confusion seems to creep into the decisions. If it be borne in mind, however, that whenever this occurs, the rule applies that, so long as a defendant lawfully pursues a legitimate purpose of his own welfare and interest, he may pursue such purpose to the injury of others, provided the injury thus inflicted is not wanton, then much of the difficulty presented by the cases disappears.

The case which plaintiff cites as being directly in point is that of Walker v. Ft. Worth Insurance Underwriters Association, Tex.Civ.App., 79 S.W.2d 661, 662, writ dismissed. It was an appeal from a temporary injunction granted to plaintiffs below, who were a partnership operating a local insurance agency in Ft. Worth, but two of said partners were stockholders in a mutual insurance company. The defendant in that action was a trade association of local insurance agents. It adopted a rule that no insurance agent who is agent of a mutual (i. e., non-stock) insurance company could belong to such association. Plaintiffs thereupon ceased to represent the mutual companies. Later defendant adopted a rule that members therein be "limited to local fire * * * insurance agents representing and placing business in stock insurance companies only, whose members have no financial interest, association or affiliation with any company, firm or association

498

writing fire casualty or surety insurance in other than stock insurance companies." The quoted rule made plaintiffs ineligible for membership, and they were dropped. Then, by the following rule (which for identification will be called rule No. 2, as the first quoted rule will be called No 1): "The following shall be ineligible to membership towit: (a) Those who are agents of any fire, casualty or surety insurance company, including underwriters of same, who has or whose General Agent or manager has agents within the membership jurisdiction of this exchange, and who are not members of this exchange." By this rule all members of defendant were bound not to give any business to any company which accepted any business from plaintiffs. The court held:

"Appellees are voluntary private associations, and are within their rights as such to set up qualifications for membership which exclude from their association any one who has an interest in or represents a mutual association.

"They do not have the right to enforce upon their membership rules of business which have as their primary purpose forcing upon those with whom the members do business the boycotting of those ineligible to membership, or binding the members to withdraw their business from any one doing business with [plaintiffs]."

And the court continued in force the temporary injunction against the operation of rule No. 2 being the last rule hereinabove quoted.

We agree with the holding in the Walker case just quoted. While the court has cited no authority for the holding none was required, for it was determined that the rule had for its purpose an unlawful end, the purpose of violating the law. This must have been made to appear as a matter of law in order for the court to have held the rule was designed primarily for the accomplishment of an unlawful purpose. But the in-and-out rule was not shown as a matter of law to be an unreasonable limitation upon the activities of the members.

Failing to find that plaintiff made out a case of future injuries, and failing to find the rule complained of was shown to be illegal as a matter of law, we must sustain the trial court's judgment. It will be so ordered.

Affirmed.