

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00116-CV

_____


PETER PJETROVIC, Appellant

V.

HOME DEPOT, Appellee


On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CV-09-39275


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Peter Pjetrovic, who had brought suit against Home Depot,[1] appeals the entry of a take-nothing judgment entered in favor of Home Depot after an instructed verdict. Pjetrovic alleged that his house suffered flooding due to the faulty installation of a dishwasher, which he alleged that he had purchased from Home Depot and had paid Home Depot to install. Although the trial court excluded Pjetrovic's estimate of some $140,000.00 in damages resulting from the flooding, Pjetrovic was allowed to present evidence that he had sustained $1,710.25 in damages.

In 1997, Pjetrovic, an immigrant to the United States and the chef/owner of several Dallas restaurants, purchased a 261-acre ranch in Ivanhoe, Fannin County, Texas, upon which he constructed a house as a residence for his family. In 2007, preparatory to placing the property on the market for sale, Pjetrovic purchased a dishwasher appliance from Home Depot, the purchase price including the cost of installation. Larry Hoffman,[2] a plumber who had apparently been sent by Home Depot, came to install the dishwasher (this being his third attempt, the first two times having been supplied with the wrong model of dishwasher). In this final trip, Hoffman spent only about fifteen to twenty minutes installing the dishwasher and then left without causing it to go through a wash cycle to assure that it was operating properly.

Pjetrovic testified that after the dishwasher was installed, he and his family left the house to spend the night in Dallas, leaving at about the same time that Hoffman departed. At this time,

---

[1]According to most of the defendant's pleadings, its true name is "Home Depot U.S.A., Inc." Despite this, the moniker attached to the defendant in the style of the case, the plaintiff's pleadings, and the final judgment is simply "Home Depot." Since the actual name of the defendant does not otherwise appear in the record, for the purpose of this opinion we will adopt the common name ("Home Depot") employed by the plaintiff and the trial court.

[2]We note the clerk's record contains references to the installer as "Larry Huff." Because the record does not clearly explain which name is correct for this individual, we use "Larry Hoffman," which was the name used during trial.

2

the dishwasher had not been "cycled through" and was not running when they exited the house. When the Pjetrovic family returned to the house the next day, they found it so flooded that water was running out of the weep holes in the exterior brick walls and the water had materially damaged the sheetrock, cabinets, trim, and floor coverings. After turning off the water well pump, Pjetrovic observed that the source of the flood waters was the pipe providing hot water to the dishwasher. Pjetrovic hired Metroplex Services to pump out the water at a cost of $1,710.25. Lacking funds to repair the damages caused to the house, Pjetrovic was forced to remove it from the market and continued to live there in its damaged state even though odors he attributed to the flooding developed which he indicated adversely affected his breathing and were the cause of constant complaints from his children.

Pjetrovic filed suit against Home Depot alleging that it had violated the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA)[3] and certain provisions of the Texas Insurance Code, had committed common-law fraud, had acted negligently, and had breached its contract with Pjetrovic. There seems to have been some difficulties in getting the matter ready for trial and, when discovery had yet to be completed a year and a half after the suit was filed, the trial court entered a scheduling order February 28, 2012. The record contains a motion to compel discovery which alleges that Pjetrovic failed to attend a deposition scheduled on April 20, 2012, but that motion was "cancelled." Although the scheduling order specified a deadline to disclose testifying experts by July 27, 2012, and a trial date of October 29, 2012, Pjetrovic failed to disclose any experts within the deadline prescribed by the scheduling order.

---

[3]TEX. BUS & COM. CODE ANN. §§ 17.41–.63 (West 2011 & Supp. 2012).

Pjetrovic's first attorney filed a motion to withdraw on August 24, 2012.[4]  A Rule 11[5] agreement extending the deadline for the designation of experts to September 10, 2012, was filed August 29, 2012.  On August 31, 2012, the trial court held a hearing on Pjetrovic's attorney's motion to withdraw.  At that time, the trial court noted the filing of a "joint motion for withdrawal of counsel" (signed both by Pjetrovic and his attorney) and granted the motion.  Pjetrovic failed to designate any expert witnesses by September 10, 2012, and some eighteen days later, Pjetrovic's new counsel filed a notice of appearance, a motion for continuance, and a motion to extend the deadlines of the scheduling order.  The motions were heard by the trial court on October 5, 2012, and were all denied.  On October 10, 2012, Pjetrovic filed a second motion for continuance, but following a hearing on that motion on October 19, 2012, the trial court denied the second motion for continuance as well.

In accord with the scheduling order, jury selection commenced October 29, 2012.  At trial, Pjetrovic was faced with the fact that he had no designated experts to testify concerning the amount of damages his house had suffered.  He then argued that as the owner of the property, he could testify both as to the value of the property before the damage was suffered and the value after the flooding occurred.  Although the trial court initially concurred with this argument, ruling that Pjetrovic would "be able to testify about his opinion of the value of his property before and after, as well as his opinion of the costs," a lengthy discussion ensued among the trial court and the attorneys.  After that discussion, the trial court ruled Pjetrovic's testimony

---

[4]Pjetrovic claims in his brief that he did not agree to this motion, but the record contains no evidence that Pjetrovic opposed this motion.

[5]TEX. R. CIV. P. 11.  The parties do not brief and we do not express any opinion concerning whether a Rule 11 agreement can be used to modify a scheduling order.

concerning the damages he experienced would be limited solely to "the value of his property and the cost to -- that he's paid to repair it." When Pjetrovic attempted to introduce evidence concerning estimates he had received for the repairs that he believed to be necessary, the trial court sustained Home Depot's objection. The trial court also excluded Exhibit 1A,[6] which Pjetrovic attempted unsuccessfully to introduce as a business record.

When Pjetrovic rested his case, Home Depot requested a directed verdict. The trial court granted the directed verdict, dismissed the jury, and rendered a take-nothing judgment in favor of Home Depot.[7] On appeal, Pjetrovic complains that the trial court abused its discretion by granting the directed verdict, in having denied his two requested continuances, in its refusal to permit Pjetrovic to supplement discovery, in having ruled Exhibit 1A to be inadmissible, and in excluding Pjetrovic's testimony regarding the costs of repair of the damage. He also maintains that the trial court erred in granting judgment for Home Depot.

## I.     The Trial Court Neither Abused Its Discretion in Permitting Pjectrovic's Attorney to Withdraw Nor in Denying Pjetrovic's Requested Continuances

Pjetrovic contends in his first issue that the trial court erred in permitting his first attorney to withdraw because the withdrawal had a material adverse effect on the outcome of the case. Pjetrovic alternatively complains that the trial court should have granted him a continuance after his first attorney withdrew.

---

[6]The nature of this exhibit and its content is discussed at more length later in this opinion.

[7]When granting a directed verdict, a trial court may either instruct the jury to return a specific verdict or dismiss the jury and render judgment. *See Cline v. Ins. Exch. of Houston*, 154 S.W.2d 491, 493 (Tex. Civ. App.—Galveston 1941), *aff'd*, 166 S.W.2d 677 (Tex. 1942).

As correctly argued by Pjetrovic, Rule 10 of the Texas Rules of Civil Procedure[8] is not the sole legal requirement with which an attorney seeking to withdraw must comply. *See* TEX. R. CIV. P. 10. The Rules of Professional Conduct permit a discharged attorney to withdraw without any consideration of prejudice to the client, but an attorney who has not been discharged cannot withdraw if it would have "a material adverse effect on the interests of the client." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15. The Texas Supreme Court has held that a court has a duty to see that an attorney's withdrawal will not result in foreseeable prejudice to the client. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986) (attorney could not withdraw two days before trial); *McAleer v. McAleer*, 394 S.W.3d 613, 618 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

We review the ruling on a motion for continuance for a clear abuse of discretion. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). Pjetrovic's first motion for continuance was not accompanied by any affidavit. "No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. During the hearing, Pjetrovic presented no evidence in support of his motion for continuance. If a motion for continuance was not accompanied by an affidavit, we may not find an abuse of discretion. *See Mathew v. McCoy*, 847 S.W.2d 397, 399 (Tex. App.—Houston [14th Dist.] 1993, no writ).

---

[8] We note that Pjetrovic also complains that the deadlines in the motion did not comply with Rule 10 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 10. Before the trial court granted the motion to withdraw, a Rule 11 agreement was filed. The deadlines in the motion were consistent with the Rule 11 agreement—even though the concept of whether the Rule 11 agreement could override a scheduling order is not addressed.

We note that Pjetrovic filed a second motion for continuance on October 10, 2012, which states, "The evidence shows that Movant was not negligent or at fault in causing his former attorney's withdrawal. See Exhibit 'A'." The Exhibit A to which reference is made consists of Pjetrovic's affidavit[9] which, while containing assertions that might demonstrate that Pjetrovic exercised due diligence in securing a new attorney, contains no assertions concerning negligence by or fault in the withdrawal of the first attorney.

Pjetrovic's first attorney's initial motion to withdraw stated, "Movant and Plaintiff are unable to communicate in a manner that permits Movant to fully prepare and represent Plaintiff in this cause." The joint motion to withdraw signed by Pjetrovic, which postdated that initial motion, does not contain this statement. Pjetrovic's sole explanation for the withdrawal of Pjetrovic's first attorney is that Pjetrovic was late for a mediation. At the hearing on the second motion for continuance, Pjetrovic's attorney states that Michael Evans withdrew because Pjetrovic failed to show up "timely" to a scheduled mediation. We note that Pjetrovic's counsel at that time had no personal knowledge of these facts, and it is apparent from the record that his statements (not made under oath) were not intended as testimony.[10] The second motion for

---

[9]The affidavit also provides that Pjetrovic, on August 29, 2012, scheduled an appointment with another attorney, Kenneth Roesler, on September 7. At the meeting, Roesler informed Pjetrovic that his wedding was scheduled close to the trial setting and that he may not be able to take the case. Pjetrovic states that he then attempted to get Roesler to advise him how to designate experts. After Pjetrovic "called Mr. Roesler many times," Roesler referred Pjetrovic to Gary Corley. Pjetrovic met with Corley on September 28, 2012.

[10]We note this Court has held, even though the testimony of attorneys should be under oath as with any other witness, the statements of an attorney can be evidence if no objection to the lack of an oath is made. *See Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 338 (Tex. App.—Texarkana 2004, pet. denied); *see also In re M.N.*, 262 S.W.3d 799, 804 (Tex. 2008) (attorney's statement, without objection, was evidence). On these occasions, however, it was apparent that the attorney was making assertions of facts based on personal knowledge and everyone regarded the statements as assertions of facts. In this case, the attorney's statements were merely a summation of events about which the attorney had no personal knowledge. Thus, opposing counsel neither knew nor should have known an

7

continuance does allege that Pjetrovic was a half-hour late to a mediation due to a doctor's appointment and that Home Depot's counsel had already left. The record contains no evidence concerning why Pjetrovic's first attorney withdrew.

When a request for a continuance is based on the withdrawal of counsel, it is the duty of the movant to show that the withdrawal was not due to negligence or fault on the part of the movant. *Villegas*, 711 S.W.2d at 626; *Pandozy v. Shamis*, 254 S.W.3d 596, 601 (Tex. App.— Texarkana 2008, no pet.). The Texas Supreme Court has suggested that it may be the trial court's duty to see that an attorney's withdrawal will not result in foreseeable prejudice to the client. *Villegas*, 711 S.W.2d at 626 ("In this case, the trial court abused its discretion because the evidence shows that Villegas was not negligent or at fault in causing his attorney's withdrawal."). Assuming, without deciding, an attorney's withdrawal is grounds to request a modification to a scheduling order,[11] we are confident that the requirement of lack of negligence and fault would apply as well. Because Pjetrovic has failed to show his first attorney's withdrawal was not due to negligence or fault of Pjetrovic, error has not been established.

## II. The Trial Court Did Not Abuse Its Discretion in Refusing to Modify the Scheduling Order

In his first and second issues, Pjetrovic complains that the trial court erred in refusing to enlarge the time under the Level III scheduling order to designate expert witnesses and to

---

objection was necessary. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam) (waiver occurs "when the opponent knows or should know that an objection is necessary"); *see also Russ*, 128 S.W.3d at 338 (opponent knew or should have known because "the evidentiary nature of the statements was obvious").

[11]Pjetrovic has provided us with no authority addressing whether modifying the deadlines in the scheduling order is an appropriate remedy to prevent any prejudice. For the purposes of this opinion only, we will assume it is an appropriate remedy.

conduct discovery. In light of the trial court's refusal to grant a continuance, Pjetrovic claims the refusal to modify the scheduling order was an abuse of discretion. According to Pjetrovic, there was no danger of trial by ambush, and the trial court's decision resulted in the case being decided based on procedure rather than on a full presentation of the merits. Pjetrovic argues Home Depot could have requested a continuance if the requested extension would have occasioned it any surprise or prejudice.

A scheduling order as envisioned by the Texas Rules of Civil Procedure is to establish discovery control plans. *See* TEX. R. CIV. P. 166a(c), 190.4. Appellate courts review a trial court's enforcement of a scheduling order for an abuse of discretion. *Gunn v. Fuqua*, 397 S.W.3d 358, 377 (Tex. App.—Dallas 2013, pet. filed). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

When a party fails to timely designate an expert, exclusion is "mandatory and automatic unless the court finds there was good cause for the failure to amend or supplement, or the failure will not unfairly surprise or prejudice the other party." *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 902 (Tex. App.—Texarkana 2004, pet. denied); *see* TEX. R. CIV. P. 193.6; *see also* *Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009) (per curiam). Pjetrovic had the burden of establishing good cause or a lack of unfair surprise or prejudice. *See id.*

While Pjetrovic's second attorney may have been hired at the eleventh hour, Pjetrovic does not explain how he established good cause for a continuance in light of the inaction of his

former counsel. Pjetrovic's lawsuit had been pending since July 28, 2009. Pjetrovic fails to explain how good cause has been established when one takes into account that the case remained almost inert for a period of almost three years. "Inadvertence of counsel is not good cause for failure to adhere to discovery deadlines." *Sprague v. Sprague*, 363 S.W.3d 788, 800 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see Alvarado v. Farah Mfg. Co*., 830 S.W.2d 911, 915 (Tex. 1992) (listing examples that are not good cause); *PopCap Games*, *Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 718 (Tex. App.—Dallas 2011, pet. denied). Pjetrovic has failed to show good cause for an extension of the discovery deadlines.

While Texas recognizes a preference for cases to be decided on a full presentation of their merits, Texas also recognizes that "[a] party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory." *Smith v. Sw. Feed Yards*, 835 S.W.2d 89, 91 (Tex. 1992). Home Depot was entitled to prepare for trial assured that it would not be surprised by new expert witnesses only a few weeks before trial. The trial court did not abuse its discretion in its refusal to grant a continuance.

**III.     The Trial Court Did Not Abuse Its Discretion in Excluding Exhibit 1A**

Pjetrovic argues, in his second issue, that the trial court abused its discretion in excluding Exhibit 1A as a business record of Home Depot. Exhibit 1A is a document which purports to be

10

a Home Depot chronological log of various communications among Pjetrovic, Hoffman, and Home Depot employees.[12]

Rule 803(6) of the Texas Rules of Evidence creates a hearsay exception for properly authenticated business records. TEX. R. EVID. 803(6). This Court has observed:

> The foundation for the business records exception has four requirements: (1) the records were made and kept in the course of a regularly conducted business activity, (2) it was the regular practice of the business activity to make the records, (3) the records were made at or near the time of the event that they record, and (4) the records were made by a person with knowledge who was acting in the regular course of business.

*Good v. Baker*, 339 S.W.3d 260, 273 (Tex. App.—Texarkana 2011, pet. denied); *see Powell v. Vavro*, *McDonald*, *& Assocs., L.L.C.*, 136 S.W.3d 762, 765 (Tex. App.—Dallas 2004, no pet.). As the proponent of the evidence, Pjetrovic bore the burden of showing that the proffered documents fit within an exception to the general rule prohibiting the admission of hearsay evidence. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

Exhibit 1A was not accompanied by a business records affidavit. Pjetrovic made a formal bill of review concerning Exhibit 1A. Joel Barron, Jr., Home Depot's representative at the trial, testified that his duty with Home Depot was as an asset protection officer. Although his job mainly concerned internal and external theft and the receipt of merchandise, Barron testified he also had some familiarity with Home Depot's records and that Exhibit 1A "[l]ooks like" a business record of Home Depot. Barron testified that similar documents are prepared and maintained in the ordinary course of business by persons with personal knowledge of the facts.

---

[12]The log contains the following entry: "INSTLR WENT OUT TO CUST HOUSE TO INSTALL D/W AND NOTICED THAT THE VALVE LOOKED STRANGE. HE ASSUMED THAT IT WOULD HOLD SO CONTINUED WITH INSTALL."

11

Barron, though, was unfamiliar with the record represented by Exhibit 1A or with the associates who made the entries in the record.

Pjetrovic never established the first requirement of qualifying the exhibit as a business record—that the record at issue was made and kept in the course of a regularly conducted business activity. Barron was not a custodian of that record and merely testified that the record "[l]ooks like" a Home Depot record. Pjetrovic was required to provide evidence that the record was a Home Depot record prepared and maintained in the ordinary course of business—not that the record *might be* a Home Depot record prepared and maintained in the ordinary course of business. Pjetrovic failed to establish the record was a business record, and the trial court did not abuse its discretion.

## IV. The Trial Court Did Not Abuse Its Discretion in Refusing to Permit Lay Testimony on the Cost to Repair

In his third issue, Pjetrovic argues that the trial court erred in excluding Pjetrovic's lay opinion testimony concerning the cost of repairs to the house.[13] Pjetrovic does not argue he should have been qualified as an expert witness, but, rather, he claims that as a homeowner, he could testify concerning the cost to repair his own home.[14]

---

[13]We note that a homeowner may elect to seek damages for the cost of repair, the diminution of value, or even both provided both would not result in double recovery. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (election required because awarding both would result in double recovery). We further note the trial court initially ruled that Pjetrovic could testify to the diminution in value. Pjetrovic does not argue on appeal that he should have been permitted to testify concerning the diminution of value of the house. Because the issue has not been raised on appeal, any error committed by the trial court in later refusing to permit Pjetrovic to testify concerning the diminution in value has not been assigned for our review. *See Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (per curiam).

[14]Pjetrovic claims Rule 193.6 of the Texas Rules of Civil Procedure does not apply to "parties named in the suit," citing *Southwest Feed Yards*, 835 S.W.2d at 91 (discussing predecessor to TEX. R. CIV. P. 193.6). While *Southwest Feed Yards* notes that an undisclosed party witness should not be excluded "when identity is certain and when his or

Pjetrovic perfected a formal bill of review outside the presence of the jury. In that, Pjetrovic testified that he had priced the materials he believed were needed to repair the house and the cost of the materials totalled $73,212.50. Recalling his experience when he had acted as his own contractor in building the house in 1997, Pjetrovic said he had spent approximately $80,000.00 in materials and had a total construction cost of $160,000.00. Pjetrovic, based on his personal experience, then estimated the total cost to repair the flood damage to be approximately $140,000.00. In addition, Pjetrovic obtained one estimate on damages and, "based upon that estimate," believed damages would be approximately $146,000.00.

Under what is known as the "property owner's rule," a property owner can testify to the market value of his own property. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984); *Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 442 (Tex. App.—Texarkana 2006, no pet.). This rule, though, is limited to the market value of the property.

Pjetrovic cites *Bernstein v. Thomas*, 298 S.W.3d 817, 826 (Tex. App.—Dallas 2009, no pet.), and *Bennett v. McDaniel*, 295 S.W.3d 644, 645 (Tex. 2009) (per curiam), in support of his argument that lay testimony is permitted to testify on the issue of costs. In *Bernstein*, the Dallas Court of Appeals held that a homeowner can testify concerning the reasonableness of "[a]n objective valuation of services, such as a bill, receipt or . . . an estimate." *Bernstein*, 298 S.W.3d at 826. The Dallas court did not conclude that a landowner could testify as to the cost to repair. *See id.* In *Bennett*, the Texas Supreme Court, while noting the testimony could have been

---

her personal knowledge of relevant facts has been communicated to all other parties," we note that *Southwest Feed Yards* cautions, "Certainly a more obscure or indirect identification than that involved here could permit exclusion of a party witness." *Id*. Because Home Depot does not rely on Rule 193.6 of the Texas Rules of Civil Procedure, we do not need to decide the issue in this case.

13

excluded as hearsay, suggests a jury could consider a homeowner's testimony concerning an estimate to repair a house's roof. *Bennett*, 295 S.W.3d at 645. We first note that *Bennett* remanded the case in the interests of justice because the homeowner failed to testify that the estimate was reasonable. *Id.* Thus, the suggestion was only dictum. Second, the dictum in *Bennett* upon which Pjetrovic relies concerns error preservation and does not include a holding that a landowner may testify as to the cost of repair. At best, *Bennett* merely holds that an objection to hearsay evidence is required. *Id.* Finally, the cost to repair in *Bennett* was based on a professional estimate, not the homeowner's own opinion. *Id.* Pjetrovic sought to introduce his own estimate of the cost to repair—not an estimate of a professional.[15]

Home Depot relies on *Wortham Bros., Inc. v. Haffner*, 347 S.W.3d 356, 361 (Tex. App.—Eastland 2011, no pet.). In *Wortham*, the Eastland Court of Appeals held the property owner's rule "does not extend to the reasonable cost of repairing the owner's property particularly when those repairs are of a technical or specialized nature." *Id.* We agree with the Eastland court. The property owner's rule is based on the presumption that the average property owner will be familiar with the market value of his own property. The average property owner, however, will not be familiar with the cost to repair that property, especially when the repairs are of a technical or specialized nature.

Pjetrovic argues that *Wortham* concerned a roof repair which he says is more technical in nature than the home improvement type of repairs involved in his case. It is not necessary for us

---

[15]We note that Pjetrovic testified he talked with two companies and received one estimate. The estimate he sought to introduce, though, was based on his own calculations. Pjetrovic did testify he believed his estimate to be reasonable based on the one estimate he received, but did not testify as to what that estimate was. Further, unlike in *Bennett*, Home Depot objected to the testimony.

to decide whether a homeowner can testify concerning minor repairs. In his bill of review, Pjetrovic testified concerning major renovations estimated to cost $140,000.00. These renovations involve the repairs or replacement of drywall, tile, carpeting, and cabinet work. Pjetrovic's testimony exceeds normal home improvement and, in essence, concerned a whole house renovation. Pjetrovic conceded that the initial cost of constructing the house was $160,000.00. While many homeowners may do the type of renovations necessary to repair the damage to Pjetrovic's house, such renovations do require technical skills if they are to be done correctly. The average layperson would lack the specialized knowledge, skill, experience, or training to correctly install drywall, tile, carpeting, and cabinets—particularly on a project of this size.[16] The trial court did not err in concluding Pjetrovic could not give lay opinion testimony[17] concerning the whole house renovation at issue in this case.

## V. The Record Contains Less Than a Scintilla of Evidence that Hoffman Was Negligent

Pjetrovic's fourth issue contends the trial court erred in granting a directed verdict because fact issues existed concerning negligence.[18] Although Pjetrovic had a contractual relationship with Home Depot, the issue before this Court is liability for the tort of negligence—

---

[16]*Cf. Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851 (Tex. 2011) ("[W]hen the main substance of the witness's testimony is based on application of the witness's specialized knowledge, skill, experience, training, or education to his familiarity with the property, then the testimony will generally be expert testimony within the scope of Rule 702.").

[17]Pjetrovic has not argued on appeal that he has the specialized knowledge, skill, experience, training, or education to testify as an expert.

[18]Home Depot's request for a directed verdict focused on the negligence cause of action. Home Depot did not explain how its argument would support a directed verdict for Pjetrovic's other causes of action. Pjetrovic, however, has only assigned error on appeal concerning the negligence cause of action. Therefore, we will only address the negligence cause of action.

not contract liability. The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto*, *Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Home Depot does not challenge that Pjetrovic had damages proximately caused by the breach.[19] Home Depot argues the trial court did not err in granting a directed verdict because Pjetrovic failed to prove that Hoffman was negligent, failed to prove that Hoffman's negligence was in fact the cause of the flooding, and failed to prove that Home Depot was liable for Hoffman's negligence.

"In reviewing a directed verdict, we decide whether there is any evidence of probative value to raise an issue of material fact on the question presented, and we review the evidence in the light most favorable to the person suffering the adverse judgment." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 220 (Tex. 2011); *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (per curiam). The presence of some evidence "will defeat the directed verdict." *Exxon*, 348 S.W.3d at 220. The Texas Supreme Court has observed a directed verdict may be proper in two situations: 1) "when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery" and 2) "if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

A "no evidence" point will be sustained only if there is a complete absence of evidence establishing a vital fact, the only evidence offered to prove a vital fact cannot be considered due to a rule of law or evidence, there is less than a scintilla of evidence to prove the vital fact, or the

---

[19]We note Pjetrovic introduced evidence of $1,710.25 in damages.

16

opposite of the vital fact is conclusively established. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a scintilla of evidence exists when the evidence permits the conclusion of reasonable and fair-minded people to differ. *Merrell Dow Pharms.*, *Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). In our review, we credit favorable evidence if a reasonable fact-finder could do so and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

Home Depot claims Pjetrovic failed to explain why the leak occurred and failed to prove that the leak was a foreseeable result of Hoffman's negligence. Home Depot acknowledges that there is evidence this was Hoffman's third attempt to deliver and install the dishwasher, the installation only took fifteen to twenty minutes, Hoffman did not cycle the dishwasher, and when Pjetrovic returned home, Pjetrovic observed water coming from the dishwasher "supply line." According to Home Depot, neither the fact that the installation only took fifteen to twenty minutes nor the evidence that Hoffman did not cycle the dishwasher is evidence of negligence (either singularly or together) in the absence of evidence that a reasonably prudent plumber would have behaved differently. Because Pjetrovic testified the dishwasher was not running when he left the house, Home Depot points out that cycling the dishwasher would have neither detected nor prevented the leak that occurred. Further, the mere fact that Hoffman had attempted on two different prior occasions to deliver a different model than the one that was ordered does

not permit any inference of negligence in the installation of the dishwasher eventually installed. As a last point, Home Depot claims there is no evidence the leak from the dishwasher's supply line occurred due to any act or omission on the part of Hoffman.

Pjetrovic's personal observations of the leak were insufficient circumstantial evidence to create a fact issue concerning whether Hoffman was negligent. Pjetrovic testified that he returned home to a house filled with water and a leak coming from the pipe supplying water to the recently installed dishwasher. Pjetrovic did not specify whether the leak was due to a burst pipe, whether a joint had failed, or what had caused the leak. The leak might have been caused by Hoffman's negligence in installing the dishwasher, but it might also have been caused by a multitude of causes, such as a corroded supply line or a product defect in the dishwasher. While the circumstantial evidence certainly can create a suspicion that Hoffman was negligent, the conclusion that Hoffman was negligent was nothing more than speculation. While a jury may make reasonable inferences from circumstantial evidence, the jury may not make inferences that are merely guesses. *See JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 396 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Pjetrovic failed to present more than a scintilla of evidence that Hoffman was negligent.

The trial court did not err in granting Home Depot's motion for directed verdict.

## VI.   Conclusion

While some judges may have exercised their discretion differently, we cannot say that the trial court erred in permitting Pjetrovic's first counsel to withdraw, refusing to grant Pjetrovic a continuance, or refusing to modify the scheduling order discovery deadlines. Pjetrovic failed to

establish that Exhibit 1A was admissible as a business record, and the trial court did not err in excluding any lay opinion testimony by Pjetrovic on the cost to repair the house. Lastly, the trial court did not err in granting a directed verdict because Pjetrovic failed to establish the leak was caused by Hoffman's negligence.

For the reasons stated, we affirm.

Bailey C. Moseley
Justice

Date Submitted:     July 17, 2013
Date Decided:       August 20, 2013